**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee,*

v.

JOHN SAMUEL LEIGH,
       *Defendant-Appellant.*

No. 02-4598

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee,*

v.

ANDREW CHARLES JACKSON, a/k/a
Sway, a/k/a William Benbow,
       *Defendant-Appellant.*

No. 02-4612

Appeals from the United States District Court
for the Northern District of West Virginia, at Martinsburg.
W. Craig Broadwater, District Judge.
(CR-01-26)

Submitted: March 20, 2003

Decided: April 1, 2003

Before NIEMEYER, LUTTIG, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**COUNSEL**

Robert E. Barrat, Martinsburg, West Virginia; Christopher D. Janelle, SUTTON & JANELLE, P.L.L.C., Martinsburg, West Virginia, for Appellants. Thomas E. Johnston, United States Attorney, Shawn Angus Morgan, Assistant United States Attorney, Clarksburg, West Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

John Samuel Leigh and Andrew Charles Jackson were charged, along with William Furley and William Tolson, with aiding and abetting each other in retaliating against a federal witness, Bobby Breeden, based on his testimony against Leigh in a prior trial. 18 U.S.C. §§ 2, 1513(b)(1) (2000). Furley and Tolson pled guilty. Leigh and Jackson were convicted by a jury after a two-day trial.

During the trial, it came to light that the prison disciplinary hearing concerning the attack had been audiotaped. Leigh moved for a mistrial on the grounds that he had not been provided a copy of the audiotapes and that they could contain exculpatory evidence. The court ordered the Government to obtain the tapes, if possible, and to make them available to the Defendants before the start of the second day of trial. The tapes were obtained and played for all counsel the night before the second day of trial. The next day, Leigh's counsel requested that only the portion of the tape involving the statements made by Furley be played for the jury; the Government disagreed, arguing that, in the interest of completeness, the entire tape should be played. The court deferred a ruling on the matter. Later, during the testimony of United States Marshal Jeffrey Stine, Leigh's attorney cross-examined Stine about the contents of the tape. Stine testified

that a statement made by Furley that could have provided an alternative motive for the attack was quickly discredited.

Prior to trial, the district court granted Leigh's motion to preclude mention of any drugs involved in Leigh's 2001 trial. However, during cross-examination of one of the Government's witnesses, West Virginia State Trooper Scott Dillon, Leigh's attorney asked Dillon questions about Breeden's testimony at Leigh's prior trial. Specifically, Dillon was asked if Breeden testified that Leigh was a drug dealer and had sold crack cocaine. During his questions, Leigh's attorney referred to, and read from, the transcript of Breeden's testimony during Leigh's prior trial. The Government later moved to admit into evidence the transcript of Breeden's testimony during Leigh's prior trial; over Leigh's objection the transcript was admitted. The jury convicted Leigh and Jackson; they were sentenced to 360 months and 27 months, respectively, followed by five years of supervised release. They noted timely appeals.

Jackson's only claim on appeal is that the district court erred in denying his motion for a judgment of acquittal, Fed. R. Crim. P. 29, because the Government failed to prove that Jackson intended to retaliate against Breeden. This court reviews the district court's decision to deny a motion for judgment of acquittal de novo. *United States v. Gallimore*, 247 F.3d 134, 136 (4th Cir. 2001). Where, as here, the motion is based on insufficient evidence, the relevant question is not whether the court is convinced of guilt beyond a reasonable doubt, but rather whether the evidence, when viewed in the light most favorable to the government, was sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt. *Glasser v. United States*, 315 U.S. 60, 80 (1942); *United States v. Stewart*, 256 F.3d 231, 250 (4th Cir.) (citing *United States v. Burgos*, 94 F.3d 849, 862-63 (4th Cir. 1996) (en banc)), *cert. denied*, 534 U.S. 1049 (2001), *and cert. denied*, 535 U.S. 977 (2002). If substantial evidence exists to support a verdict, the verdict must be sustained. *Glasser*, 315 U.S. at 80.

The elements of a violation of 18 U.S.C. § 1513 are: "(1) knowing engagement in conduct (2) either causing, or threatening to cause, bodily injury to another person (3) with the intent to retaliate for, inter alia, the attendance or testimony of a witness at an official proceed-

ing." *United States v. Cofield*, 11 F.3d 413, 419 (4th Cir. 1993). Jackson argues that the Government failed to prove the third element. Testimony adduced at trial established that, while Jackson was punching Breeden in the neck, he said: "This is for the grand jury." Furley and Tolson also testified that the four of them had attacked Breeden because he had testified against Leigh. We find that this evidence, when viewed in the light most favorable to the government, was sufficient for a rational trier of fact to have found all the elements of a § 1513 violation beyond a reasonable doubt.

Next, Leigh contends that the district court should have granted a mistrial when it was discovered that there were audiotapes of the prison disciplinary proceedings. Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the government is required to provide to the defendant upon request any evidence favorable to him that is material to guilt or punishment; failure to do so violates due process. Under *Jencks v. United States*, 353 U.S. 657, 667-72 (1957), and the Jencks Act, 18 U.S.C. § 3500 (2000), the defendant has the right to inspect, for impeachment purposes, prior statements made to government agents by government witnesses. Such statements must be produced prior to cross-examination if they relate to the subject matter of the witness' testimony on direct examination. Evidence tending to impeach a government witness, such as plea agreements and prior criminal records, must be disclosed to a defendant if known to the government. *Giglio v. United States*, 405 U.S. 150, 153-55 (1972).

Under *Brady*, a prosecutor's failure to disclose "evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. Evidence is "favorable" if it is exculpatory or if it could be used to impeach prosecution witnesses. *See United States v. Ellis*, 121 F.3d 908, 914 (4th Cir. 1997). Evidence is "material" under Brady if "there exists a 'reasonable probability' that had the evidence been disclosed the result at trial would have been different." *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995).

Leigh cannot show that the tape recording was either favorable or material. On the tape, Furley is confronted with a statement from another inmate (unidentified) who claims that Breeden had struck

Furley's sister. Furley's reply was "Why don't you go ask Breeden, then?" One of the government's witnesses, Marshal Jeffrey Stine, was present at the administrative hearing and testified that the possible motive was discredited after officials interviewed Breeden and he denied having ever met Furley's sister. Moreover, Furley testified at trial that he had participated in the beating because Breeden had testified against Leigh. Therefore, Leigh cannot show that the outcome of the trial would have been different had he obtained the tape recording prior to trial.

Also, this court has noted that "the *Brady* rule does not apply if the evidence in question is available to the defendant from other sources." *United States v. Brothers Constr. Co.*, 219 F.3d 300, 316 (4th Cir. 2000). *See United States v. Wilson*, 901 F.2d 378, 380-81 (4th Cir. 1990) (holding that a Brady violation is not shown "where the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked"). As noted by the district court, the tapes were in the control of the Eastern Regional Jail, not the Government. A thorough defense investigation would have revealed the tapes.

Finally, Leigh maintains that the district court erred in allowing the government to introduce and discuss the entire transcript of Breeden's testimony during Leigh's prior trial, where the court had granted Leigh's motion in limine barring any discussion of drugs when referring to that trial. However, Leigh clearly opened the door for this evidence when his attorney used the transcript during his cross-examination of Trooper Dillon.

Accordingly, we affirm Jackson's and Leigh's convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

*AFFIRMED*